Network Commerce. Excuse me, could I ask the Deputy Clerk to reset the clock, please? Good morning, Your Honor. My name is Scott Camber, and I represent the appellants. This is a simple case for the simple reason that the lower court's entire ruling and analysis relevant to the dismissal of the Securities Act counts was a single statement devoid of citation and support. If that statement was correct, appellants lose absence and opportunity to amend. If in error, the lower court should be reversed, and plaintiffs should have their day in court. The lower court held in one statement at page 166 of the record, lines 13 through 16, That's it. The following. The court rules that plaintiff's allegations sound in fraud. Period. No citation. Plaintiffs are not claiming here that defendants merely made errors in registration statements and prospectuses, semicolon. Rather, these claims allege fraud on the part of defendants, fraud committed to benefit the company and or Walker. No citation to the complaint whatsoever. What about all of the references to concealed, materially false and misleading? Don't these sound in fraud? They would, Your Honor. Yes, they would. But in the paragraphs of the complaint that are included in the counts for the Securities Act claims, those – that type of language does not exist. We were – this complaint was carefully constructed by plaintiffs in the post-Stack world. We knew Stack before we pled the complaint. We don't run away from that in any way. We believe the standard here today has been slightly changed under Vess and expanded, and the jurisprudence has developed. But when we pled this complaint, we knew that we need to make sure that our Securities Act claims were not infected by the fraud of the 10B. I mean, given just the common sense of given the state of the law in this circuit and in the country, for that matter, certainly we had a much better chance at the end of the day of taking the Securities Act case forward. We were more likely that that would be the end result. And so we wanted to make sure. If you had leave to amend, what would you allege right now? If we said, okay, fine, amend, what would you allege? Well, first, I think that the best amendment that we would do, Your Honor, is we believe there are limited, very limited instances, if any, where there is fraudulent averments of fraud that are made in the Section 11 claims. Our first choice would be, depending on the instruction from this Court, would be to allege a Section – a Securities Act case that does not touch on fraud, that is not grounded in fraud. It doesn't matter to us. You do that consistent with your Rule 11 obligations, having already pled as you pled. Because to the PSLRA, Your Honor, that's a very important question, and it goes to the heart of this. And that is that the PSLRA does not force us to make an election of remedies. It doesn't say and can't be read that – we don't believe it can be read respectfully – that the Securities Act, that if you plead 10B, you must – if you plead a 10B claim, you must satisfy a 9B standard with respect to Securities Act claims. That is not stack – that is not stack. That is not vest. That is not the jurisprudence that has come out of this Court or any other circuit. Nobody has gone there. Clearly – Your argument is this is an 11 case. That's right. The 10B case is gone. It doesn't exist. And the way that we pled it, we were very careful. If you look at the counts in our complaint, we don't just include, as every single other case that has been cited by defendants did, as far as we can tell from looking at the pleadings. They all use the word wholesale. They all – Yes. Let me just put the question directly. Yes. Can you allege in good faith that the omissions upon which your Section 11 claim turns were negligent? Yes. That our – absolutely. We don't – the way we pled, consistent with our pleading, the loans, for whatever reason, for whatever reason, in pleading in the alternative, the loans happened. These loans were not disclosed. Well, the district courts already determined that there was no duty of disclosure with respect to the Walker loans. So that's a dead duck. Beyond that, what allegations would you make that would support the Section 11 claim? There's the – there is u-barter. Taking the fact that the Walker loans would be gone, there is the u-barter. There are the financials and u-barter, that they are – there were details of those financials, as we alleged. We could allege that almost identically with none of the fraud allegations surrounding it. It certainly survives. And that would be based on the negligence theory, right? That could be based – that's right. I mean, consistent with Section 11, it doesn't matter why it wasn't disclosed as long as it was not disclosed and it was material. It may understack. Well, I mean, certainly, right. We certainly don't have to go any farther. We certainly would not – we would not plead. In our complaint, we would not plead why the omission was made. Now, you didn't ask the – I mean, you may have asked the district court for leave to amend, may not have. I mean, but you never said what you would plead. There's no proffer in the record, right? That's right. We weren't – that – What does that have to do with that? We said that we had – that we – at the end of our argument, we did state on the record that we had continued to do further research, further, you know, and obtained further information, that we had discussed – we had taken statements from certain witnesses, and that that would add to the detail that we could flesh out with respect to satisfying a 9b standard. I don't believe satisfying a 9b standard is required with respect to the Section 11, but certainly we've had – we have taken witness statements. We have facts that would go and underline at least an attempt at doing 9b and satisfying 9b. But it is – you know, our analysis in going through this, that if one does not – there is not one single allegation in the complaint that is common to both the Exchange Act claims and the Securities Act claims. That is a fact that seems to have gotten lost to the lower court. Certainly, it was lost on the appellees. We could not have made these any more separate than if we filed two separate complaints. And the only reason that we didn't file two separate complaints is the consolidation order of the judge in August 2001 said do it as one complaint. Otherwise, certainly, we would have done this as two different complaints. I don't think it's – we should bear an additional burden because we weren't able to put this in one complaint. To touch on the point that you made with respect to the lower court finding that there was no duty for the Walker loans, I think that that was in a slightly different – it was in the context of the 10b. I think that the duty to disclose is somewhat different under the Securities Act. So that's an allegation that's in fact common to the two? It is not. No, it's described in different terms. There are facts. But it's a problem that caused an omission in the – for purposes of your Section 11 claim, and it was a deliberate default of duty that was misleading in connection with your 10b.5 claim, right? Well, I think it would be helpful to step back from the way we built the complaint, the way we drafted the complaint. The plaintiffs drafted this complaint starting with the loans, starting with UBARTER, starting with the Securities Act claims. And then after that, the Exchange Act claims were added in distinct parts. There is not one paragraph that overlaps. We were very distinct in parts. And it is the Exchange Act claims that attribute motive, not necessarily to specifically what was done in the prospectus, in the registration statements, but that it was part of the scheme. And we described the scheme. That scheme is not a necessary component or even a related component to the nondisclosure of these loans and the omission of that disclosure. This is – this case is not terribly dissimilar from any other securities case under the PSLRA. I mean, and the fact is, there has never been a holding by a court that has said that if you plead Exchange Act that falls under the PSLRA, that you then, no matter – irrespective of what you do, you cannot successfully plead a Securities Act claim that would not have to comply with 9b. And I just – I have not been – the plaintiffs have not been able to look at the situation, to look at what we've pled, to look at what we brought before the court and come up with something that we could do differently except for not pleading the fraud at all. And if given an opportunity to amend, as we believe we should have, that's exactly what we would do. We would do what Vest says that we could do. And that is, this complaint is not grounded in fraud. It – we've pled it carefully that it is not. There may be, although I have not seen any and they have not been brought to the – to our attention in the briefings, there may be averments of fraud that are contained therein. You did have an opportunity to amend at least once, maybe more than once? No, Your Honor. Actually, I'm glad you brought that up. That is simply a misstatement by the lower court. And I can walk through with you the chronology on that, because I think it's very important. Your position on appeal is that you never were granted the opportunity to amend? Never. Okay? With respect to – it's page 168 of the record, line 18. The court holds, moreover, the CAC was filed after several previous amendments. It will be helpful, instead of myself categorizing or commenting on it, to just state exactly what happened. May 10, 2001, as the record reflects, the first complaint was filed. It was a PSLRA case. Many complaints from different plaintiffs, from different law firms came thereafter. On September 10, 2001, there was the argument for lead counsel. The following day, lead counsel was granted. In the aftermath of September 11th, in which several of the law firms involved are from New York – I personally had to drive back from Seattle to New York at the time – there was some confusion with respect to how much time we'd have, et cetera. September 26th was an important date, because the statute of limitations ran on certain defendants on September 30th. We sent a letter and an amended complaint to the court that was identical in all respects, except for adding parties that were left out of the initial complaint that was filed, to the court saying, look, we don't prejudice ourselves. This is not our first amended complaint under the consolidation order. This is merely to make sure that there is no ambiguity with respect to the statute of limitations. There are no material differences in that complaint, except to add the parties that the statute of limitations arguably would have ran out on on September 30th. It was not necessarily the preferred way to do this, but given the time constraints and the historical constructions of the moment, it was impossible for us to complete the first amended complaint by September 30th. Ultimately, there was one amended complaint that was presented to the court. There was only one amended complaint that was ever served. And that was the one filed on November 13th, 2001, consistent with the rules of the district court of Washington, consistent with the judge's order. That is the only complaint. Scalia did have one amended complaint. We had the one pursuant to the PSLRA. We had one amended complaint under the consolidation order. We had never been given any instructions from the court or other advisements. I thought I asked you that question, that did you have an opportunity to amend, and you said no. I'm sorry. I'm sorry. I implied in your question if we had any opportunity to amend after we – there was an opinion from the court or a motion to dismiss. The only opportunity we had to amend was that which is included in the PSLRA, that amendment which is required under the PSLRA. Why don't you reserve the rest of your time, and we'll hear from the other side. Unless there's something else you need to tell us. Yes, I will.  I will reserve the rest of my time. Thank you, Your Honor. Thank you. We'll hear from – Good morning. Not so good. My voice doesn't sound funny to you, but it sounds funny to me. Would you mind speaking a little louder and perhaps a little closer to the microphone? Your Honor, I've got a terrible head cold, so bear with me here. All right. We'll get through it. Let me start with focusing on Mr. Camber's answer to the court's direct question, how an amendment would be posed if an amendment were allowed. In essence, what Mr. Camber said to this panel was he would not add anything, he would take things away. Well, isn't that just exactly what Vess and Lone Star contemplate? Actually, no, Your Honor. We might call it the once the bell is rung, it can't be unrung rule. It's this. One must look at the totality of the complaint as pled. There are Rule 11 obligations here. One can't just willy-nilly throw words on a page and give it to the court and expect the court to make amends for counsel's missteps later. One has to think out what a complaint is going to say, present the best complaint to the court. Presumably plaintiff's counsel did that. They've had several chances to do that. I'll come back to that. In drafting this complaint, what they've alleged is a unitary scheme of fraud. It is impossible. I understand that. But Vess, which came down after the district court's decision, embraces Lone Star, which says if you've got this kind of situation where you've got fraud allegations and you've got non-fraud allegations and fraud is not an element of the claim, which it is not for purposes of Section 11, then the proper thing to do is to disregard or toss out the fraud allegations that cannot be pled with particularity under 9b and see what's left. Now, the district court understandably didn't do that here because it was doing it without reference to Vess, but didn't raise Lone Star. Actually, Vess adopts the Stack rule. Remember, two principles come out of the combination of Vess and Stack. Let's talk about the law for just a minute, just to make sure we're all on the same page, I hope, on the law. Vess first starts out by saying we agree with Stack. If the entire complaint sounds in fraud, end of the game. If it's grounded in fraud in totality, end of the game. However, if plaintiffs have made an effort to plead actions which are based in fraud and actions which are not based in fraud, not causes of action, but activities, very important distinction here, it's not a matter of pleading a negligence cause of action and a fraud cause of action. Let's use the example that pops right out of Vess. Look at page, when you get a chance, look at page 1106 of Vess. And what you'll see in analyzing the Novartis activities, what the court says is that some of Novartis' activities were alleged as fraudulent activities, i.e., a deliberate conspiracy, and some activities, not causes of action, but activities were alleged as just carelessness. Under that circumstance, what the court said is, okay, if you've got a litany of different Then we're going to do the stripped-down version, assuming that, first, the stack rule of overall unitary scheme of fraud doesn't apply. Yeah, but you see, the problem is that Lone Star, I think, makes a very good case for the proposition that it makes no sense not to toss the fraud allegations in a situation where fraud is frosting on the cupcake. That's the thing. That's the heart of what I'm trying to focus on. Yes. That's the page I'm on. Here's the simple answer. Vess isn't going to save plaintiff's complaint here because once you strip away allegations related to fraud in their section 11 claim, the whole claim is gone. And the reason is this. It's a different point, isn't it? No, because the pro – I don't think so. Because the strip-away process says anything that relate to the fraud side, take away from the entire claim and then see what's left. Right? And the district court did not do that. Correct. This Court can do it. This Court is here on a de novo review. And what I'm assuring this Court is there is nothing pled in section 11 that is also not pled as fraud in 10b, which is to say you don't have separate activities. You have exactly the same activities pled as a unitary scheme of fraud. Then why isn't it conceptually possible that you cannot plead fraud for section 10b-5 purposes with sufficient particular clarity, yet you could plead the same activity without reference to the heightened pleading standard and have it survive for purposes of section 11 conceptually? Because there are some things, Your Honor, that you just can't do non-deliberately. You cannot set out to invent an entire purported compensation scheme and rip off $400 million or $4.5 million and do it negligently. It just doesn't happen. There might be a conceivable case. It's not this case. There might be a conceivable case in which I could meet your paradigm. It isn't this case. There are only two activities that are alleged with respect to section 11. One is the compensation scheme, and it is just that. As alleged by plaintiffs, it's a scheme. It's a deliberate fleecing of investors. Judge Lasnik addressed the substance of that. I'll come back to that in a second. That claim doesn't get off the ground, but the fact is, as plaintiffs have presented it, it's a deliberate fleecing. There's no way to call it a negligence claim. The other side of it is the Ubarter side. Same thing. Ubarter is pled both as a 10b claim and as a section 11 claim. You'll see in the 10b section, it's paragraphs, excuse me, it's paragraphs around 115 of the complaint, 115, 116, 117. Plaintiffs allege that due diligence reports were received by Network Commerce that informed it that the Ubarter transaction was going to be a disaster, total disaster, and that they shouldn't go forward. What they actually say is receive two due diligence reports, each of which recommended against the acquisition of Ubarter. It's not consistent with negligence to have reports like that and then bury them. It's deliberate fraud. There is no way to use the VESS stripping-down technique and get to a survivable  Sotomayor, then why is it that we should make that call now rather than afford an opportunity for leave to amend under VESS and Lone Star and then have your argument made and probably succeed? I think two. And let me just, before you answer that, focus on something with respect to leave to amend that is troubling to me, is the district court didn't just straight up deny leave to amend on the Section 11 claim. What the district court did was say that because there's no discovery available under the Reform Act, then obviously the plaintiffs can't come up with anything new, novel, or different with respect to the case. Therefore, no amendment, I mean, any amendment would be futile. That's not true of Section 11, to which the Reform Act doesn't apply. So in other words, I don't see a straight-up ruling here by the district court on whether leave to amend under Rule 11, excuse me, I'm sorry, you know what I mean, under Section 11 should be allowed. Your Honor, Judge Lasnik ruled on the with prejudice portion, which is where we're at today. He ruled on the with prejudice portion of his decision on two grounds, one, futility, and two, what I would call the enough is enough rule. As to futility, this goes to what this appeal really ought to be about today. On the merits of the claims, Judge Lasnik was able to evaluate the complaint and find that there was no material misstatement alleged under Section 11. Remember, only two claims under Section 11, that is two activities. One is the purported compensation scheme, all built on a tiny foundation of a purported $240,000 undisclosed loan. That is the entire foundation of the loan claim. And that foundation has been destroyed by plaintiffs' own admission at oral argument below when they conceded that the loan was actually below 60,000, which is the SEC disclosure limit, and Judge Lasnik found as a matter of law there was no obligation to make any disclosure as to the loan issue. He also held that as to this purported compensation scheme, labeling didn't matter. If the disclosure was done, the disclosure was done. And so he ruled as a matter of law there was nothing misleading stated at all about the compensation issue. Exercised issue on appeal here? It is in this instance, Your Honor. This Court can affirm on any ground supported by the record below. We were surprised when we got plaintiffs' opening brief and they did not address the two substantive rulings that Judge Lasnik makes at page 167 of the ER. He addresses both of those points. If it would help the Court, I have a – I have that page. And can I approach? Would it be all right? I don't – I mean, if you don't want me to, I won't, but. You can leave it later. Okay. At page 167. He finds that there's no duty to disclose. There's no question about that. As to both aspects, as to both you, Barter, and the compensation scheme. And so what you have plaintiffs here today saying is their only amendment. He says the plaintiffs haven't shown what their information is based on with respect to Barter. I agree with you with respect to the Walker loans. He said there was no duty to disclose. As to the Eubarter, Your Honor. The Eubarter ones. He says there's no information, which I take to be a Rule 9 issue. But then he goes on at lines 11 and 12 of the same page you're reading from, and he Which is a Rule 9 problem. Or a litigation reform act issue, isn't it? No, Your Honor. Actually, what it relates to is what Judge Lasnik says about three lines above, and that is that the whole attack on Eubarter comes from a page of risk factors. You'll see in their complaint at page 61 of the ER, page 58 of their complaint, what they're attacking in the Eubarter section of their section 11 claim is a disclosure in risk warnings. Defensive armor used by issuers to warn the public that life may not be as rosy as the investors would like it to be. There is no case that plaintiffs have cited which have ever been able to predicate a misrepresentation on a risk warning. Think about that. What you have is something that is the foundation for the Bespeaks Caution Doctrine and the PSLRA Safe Harbor, full page of disclosures saying warnings, Eubarter may not work, Eubarter may not work, and plaintiffs say somehow that was misleading because it didn't disclose predictions of how Eubarter would do. Two problems with that. As a matter of law, under Verifone and Lyondell, this Court has already held, you know, in both of those cases and other cases, there is no duty to disclose at all predictions of the future. And so Network Commerce didn't. It did warn the public that Eubarter might not go as some people would hope it would go. It didn't predict the future. And so on a substantive level, this Court has before it the same record that Judge Lasnik did, and that is he looked and saw that the predicate for the claim was risk warnings. You know, that's just not a predicate for a misrepresentation claim. And he looked at Lyondell and Verifone, both of which we cited below and we've cited to you in the record today. This Court has a complete record to affirm Judge Lasnik on the substantive level that there is no feasible claim here. So when I get to the issue of dismissal with prejudice, there are two reasons, and they're both good reasons. The first is, at a substantive level, plaintiffs simply have not responded to the substantive defects found by Judge Lasnik in their claim. Not pleading defects, substantive defects, both in the Eubarter claim and the compensation claim. Under pathogenesis, under Stekman, we have here an example of amendment being futile. Plaintiffs have conceded today. They're not going to add anything. They're only going to take things away. That leaves them with even less than they have already. Already Judge Lasnik has found on a substantive level they can't plead a claim on compensation or Eubarter, and now they're going to take something away and have a claim? It doesn't work. This panel should affirm on the substantive ground itself. The second reason for Judge Lasnik's ruling was, as I say, enough is enough. Plaintiffs make it so. Roberts. Counsel, going back to the statement on page 167, Judge Lasnik says, and the passage is recorded, importantly, why this information makes the registration statement false or misleading. Isn't it sufficient? If we're not inside 9b, then isn't it sufficient under notice of pleading that all we have to say is that it's false or misleading? This is not a motion for summary judgment. How can Judge Lasnik conclude substantively that we failed to satisfy notice of pleading? I understand how he could conclude that we haven't satisfied 9b. That would be the why. That's exactly what Judge Lasnik says. Your Honor, it's very simple. Because under Verifone and Landau, the two leading cases on this issue decided by this plaintiff to not disclose predictive matters. In other words, this usually comes up in PSLRI cases. This isn't a PSLRI case at this point. Plaintiffs will attack the issuer for not disclosing predictions made about future events, internal reports. That's exactly what's being alleged here about Eubar. But if we allege that it's false or misleading, then don't the plaintiffs get an opportunity to show that it's false or misleading? It's not enough just to say it's false or misleading. We have to talk about what are they saying is false or misleading. What they're saying is false or misleading is their, as they plead it, their the alleged failure to disclose that Eubarter wasn't going to do very well. And what this Court has squarely held in both Landau and Verifone is there is no obligation to make such a disclosure. That is just black-letter law in the Ninth Circuit and can't be revisited. I don't think today. Certainly plaintiffs have not challenged those rulings. So on the first level, yes, it would be totally futile to allow, particularly on what we've heard today, it would be totally futile to give leave to amend. The substance of the claims isn't there. It's been found by Judge Lasnik. And this Circuit has held that where substantive rulings have been made, and there are substantive rulings here and haven't been challenged on appeal, those are the verity. The second grounds for his decision, as I say, enough is enough, really goes to how many opportunities there have been to plead a new complaint. There may have been a lot of chances to plead a new complaint. My problem with it is that none of them followed a motion to dismiss with a ruling by the court saying what the deficiencies are. Your Honor, under Rule 59 and Rule 60, plaintiffs had a year to go back to Judge Lasnik and say, reopen. We found more information and we want to amend the complaint. I'm sorry. Under Rules 59 and Rule 60, to reopen the judgment, plaintiffs had every opportunity to go back to Judge Lasnik and say, we have new information. But it wouldn't have mattered anyway because plaintiffs have conceded to you today they don't have new information. They do not have any new information. I understand they say they don't have new information. Why aren't they entitled to have some judge look at the complaint on cause of action asserted under Section 11 with the fraud allegations tossed? Because they would have less than they already have. And as I told you just a moment ago. They don't need more. They need less. Well, on a substantive. On Section 11. That's a conceptual problem. On a substantive level, they can't save the compensation claim because it's built on a total predicate of a loan that was below the SEC bright line. That is obvious to us because they don't appeal it. Is that the best? They not only don't appeal it, but they ended up conceding it in oral argument  Okay. And the and it's obvious to us that the risk assessment from the face of the complaint, it's obvious that this falls under ERACON? Yes. Yes, Your Honor. Just in the face of the complaint? Yes. Without leave to monkey with it? Yes. You will see that as to. In your best authority for the proposition that you don't get a second bite at the is? I would rely squarely on STAC and VESS. STAC standing for the proposition that if the entire complaint sounds in fraud, you don't go back. VESS isn't good authority for not having a second bite at the apple. I understand. I understand. So the best authority for no second bite at the apple for Section 11 is STAC? Well, on the merits, it really is pathogenesis and the Steckman v. Hart-Brewing cases, which deal with the futility of an amendment. Your Honor, let me come back to my point about Rule 59 and Rule 60. If plaintiffs really claimed to have been blindsided by the ruling on 9B, which in candor I find hard to believe, but if they were, they could have approached Judge Lasnik and said, We do have additional information. We'd like to amend our complaint. We would have been hard-pressed, I suppose, to say no if they had new information that they discovered shortly after the dismissal. But in light of today's admission that they have no new information and what they would try to do is just dismiss or unring the bell and take matters which can't be alleged as negligence. You can't negligently fail to disclose an entire scheme to fleece your investors. There's either fraud or there's nothing. And as to you, Barter, where they're saying that we buried reports, we didn't just negligently fail to disclose things. We buried them. And in any event, the purported right to have some disclosure comes out of predictions of future events, which is barred by Verifone and Blyandell. It just seems to me, Your Honor, you have two solid grounds to affirm Judge Lasnik. First, he did reach the merits in both matters. Plaintiffs have not taken appeal on those matters. That informs both the Court's judgment as to why there should have been a dismissal and informs the Court's judgment as to why the dismissal here should be with prejudice under the futility doctrine laid out in Steckman v. Hart-Brewing and laid out in the Lipton v. Pathogenesis case. The alternative ground the Court has here is simply the failure to plead fraud with specificity under Rule 9b. We do think that this is really a stat case, not a vest case. If it's looked at as a vest case and once you strip out any allegations of fraud, you're left with nothing for a Section 11 claim, because every claim they allege under Section 11 they've also claimed is deliberate fraud. And looked at in just a common-sense fashion, there's no way those matters could be anything other than deliberate fraud. It's not negligence. Thank you, Your Honor. Mr. Camber, you have some reserve time. Yes, Your Honor. Thank you very much. It's – everything you hear from the appellees is rather fast and loose. It's a fraudulent scheme. You can't survive without the fraud. But more than that, I mean, he specifically says that there are two bases for your Section 11 claim, and that's the compensation or walk-upon issue and the merger issue, in that you can't basically un-ring the bell. That's pretty specific. And you don't – and furthermore, he says, and it's accurate, there's no appeal taken from the district court's rulings on those two matters. Okay. Firstly, Your Honor, he cites the two paragraphs of the complaint for his basis about how it's fraudulent. He cited – when he came up here, he cited paragraphs 116 and 117. Paragraphs 116 and 117 are not incorporated into any of the Securities Act claims. The fact is we are allowed to plead in the alternative. We do not have to make an election of remedies. We don't opine. I would have a Rule 11 – the plaintiffs would have a Rule 11 issue if the Securities Act claims ascribed a particular motive as to why these things happened. But they were carefully constructed, and we are careful never to state why. It is mere – it is that they are false and misleading. And under a non-9b pleading standard, we have satisfied. The judge's ruling with respect to the compensation scheme of Walker, the reason we appealed the securities – his rulings with respect to the Securities Act claim, as we read that, they don't speak to the issue in one way or another about the disclosure requirement. He discusses disclosure in the context of 9b and in the context of the Exchange of Securities Act claim. And the judge's ruling, as we read that, they don't speak to the issue in one way or another about the disclosure requirement. And under a non-9b pleading standard, we have satisfied. The judge's ruling with respect to the compensation scheme of Walker, the reason  in one way or another about the disclosure requirement. And if 9b does not apply, then the question goes back and cannot be decided on the face of the complaint itself. With respect to you, Barter, we never conceded that we could not and would not add more if that was the direction of this Court. But under Vess, it is clear to us that we should be able to strip away the allegations of fraud, and that is how we can and we should solve our 9b problem. Counsel, what is it that you want the Court to do here? We would like the Court to do is to send us back to the lower court with the opportunity to amend for the Securities Act claims. That rule that the district court dismissed the Securities Act claims on 9b and on And if we did that, what would you say in your amended complaint? What would you ask? Pursuant to Vess, we would plead the Securities Act claims absent fraud, unless this Court directs us to do that. We would plead these claims. The issue is sufficient particularity of facts. What are the additional facts that aren't in the complaint so far? Under Vess, there are no avert we can sustain the Securities Act claims without any without ascribing motives whatsoever. We don't we would we would take we would make sure and I think we've done in the Securities Act counts in this. We would ensure that there was no that there was no avertance of fraud and that we That's that's what you're not going to put in. I want to know what would you add by way of particularly plead facts or activities that are not in the complaint now? I do not have additional facts in front of me. I know we have additional facts and at the time of the dismissal we had spoken to witnesses and had additional information. It is my hope and my belief that pursuant to Vess, that this Court, if this Court gives us the opportunity to amend, they will instruct us to do so pursuant to the second part of Vess. And that is that our claims are not grounded in fraud. Mr. Camber, I've heard you say two different things here just a minute ago. Just before I had asked you the question about what you wanted us to do and you told us that you'd like us to remand with the opportunity to amend, I heard you talk about stripping. Now, if we were not inclined to give you another opportunity to amend, what would you like us to do? To strip? I guess it was – I'm sorry. I read it as being whether we did the removal and the stripping or whether the Court did. Certainly, if you stripped away the 10B. Isn't that what Lone Star requires? Is the district court strip out the allegations of fraud and then see what's left? That is a reading that would be Lone Star. Yes. I mean, Vess itself, I think, would cast it more as giving the opportunity to amend. But certainly, it would accomplish what we seek here to direct the district court to strip out all of the – to all of the affirmations of fraud. I think that given the amount of time that has passed since we were before the lower court, certainly being able to plead this post-Vess would be an opportunity that we would take advantage of and that we would be able to do successfully. Vess gives us a great deal of instruction of how we should plead this. I have no doubt that we could go back and plead a successful Securities Act claim under the guidance of Vess. And that is the opportunity I would hope this Court would give us. It is not futile, and we should have that opportunity. And are there any further questions? No further questions, counsel. I think we understand your position. We are very familiar with Vess. Thank you, counsel. Thank you, Your Honor. You're very welcome. The case just argued will be submitted for decision, and the Court will take its morning recess. All rise. This Court now stands in recess.
judges: O'scannlain, Rymer, Bybee